UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:18-CV-112-TBR

AUSTIN BURNHAM,                                                                                    PLAINTIFFS

v.

PAPA JOHN'S PADUCAH, LLC, *et al.*,                                                  DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court on Plaintiff James Dail and Defendant Papa John's Paducah, LLC's Joint Motion for Approval of Settlement and Dismissal of Case with Prejudice. [DN 35]. Upon careful review, the Court will GRANT the motion. The Court will enter an Order contemporaneous to this Memorandum Opinion.

**BACKGROUND**

On July 20, 2018, Austin Burnham, individually and on behalf of other similarly situated delivery drivers, filed a complaint against Defendants Papa John's Paducah, LLC and Robert Workman alleging violations of the Fair Labor Standards Act ("FLSA") and the Kentucky Wage-Hour Law. [DN 1]. On August 24, 2018, James Dail replaced Burnham as Named Plaintiff and filed a First Amended Complaint. [DN 15]. On January 23, 2019, the Court conditionally certified the case as a collective action under the FLSA and approved the parties' Notice of Collective Action Lawsuit and Consent to Join forms. [DN 23]. Notices were then sent to potential opt-ins and sixteen individuals joined the collective action. [DN 35 at 182]. On June 7, 2019, Dail filed a Second Amended Complaint abandoning any state law claims and reasserting a collective action claim under the FLSA seeking "recovery of unpaid vehicle expenses which [Plaintiffs] alleged reduced net wages below the federal minimum wage, liquidated damages, interest, and attorneys' fees and costs on behalf of current and former delivery drivers who have been employed at

1

Defendants' Papa John's Paducah, LLC's stores in the Paducah, Kentucky area during the relevant timeframe." [DN 34 at 167]. On December 4, 2019, the parties filed a joint motion to settle and dismiss the case. [DN 35]. The Settlement Agreement provides that Defendants will pay a total of $36,000 to fully resolve all claims brought by Dail and the class, inclusive of attorneys' fees, costs, and service awards. [DN 34 at 169].

## LEGAL STANDARD

The parties have jointly moved the Court for entry of an order approving their settlement agreement resolving all claims raised in this matter under the FLSA. Like class action suits brought pursuant to Federal Rule of Civil Procedure 23, this action cannot be settled without court approval. *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. CIV. A. 06-299-JBC, 2008 WL 4724499, at *2 (E.D. Ky. Oct. 23, 2008). "[T]he Court's role in this situation is in many ways comparable to, but in others quite distinguishable from that of a court in a settlement of a class action brought pursuant to Fed. R. Civ. P. 23, and derives from the special character of the substantive labor rights involved." *Id.* (quoting *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 717 (E.D. La. 2008)). Specifically, the Court must determine whether "the settlement is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Id.* (quoting *Collins*, 568 F. Supp. 2d at 719).

## DISCUSSION

### A. Settlement Agreement Terms

#### I. Bona Fide Dispute

First, the Court must determine whether there is a bona fide dispute between the parties. "The FLSA creates a statutory entitlement that employers and employees generally may not agree to pay or receive less than what the statute provides for." *Ross v. Jack Rabbit Servs., LLC*, No.

3:14-CV-44-DJH, 2016 WL 7320890, at *2 (W.D. Ky. Dec. 15, 2016). However, "a federal district court may approve a settlement of a suit brought in a federal district court pursuant to Section 16(b) of the FLSA." *Crawford*, 2008 WL 4724499, at *3. "A federal district court approving any settlement of claims must determine whether a bona fide dispute exists to ensure that plaintiff employees have not relinquished their rights to compensation guaranteed by the statute." *Ross*, 2016 WL 7320890, at *2. "Without a bona fide dispute, no settlement could be fair and reasonable. Thus, some doubt must exist that Plaintiffs would succeed on the merits through litigation of their claims." *Id.* (quoting *Collins*, 586 F. Supp. 2d at 719–20).

In this case, there is a bona fide dispute as to whether Defendants pay and reimbursement policies resulted in a failure to compensate delivery drivers at the federal minimum wage. Section 6 of the FLSA requires employers to compensate employees at a rate of at least $7.25 per hour. [DN 28 at 140]. In this case, Plaintiffs are employed as delivery drivers at Defendants' Papa John's restaurants. *Id.* at 132. They use their own automobiles to delivery pizza and other food items directly to customers. *Id.* Plaintiffs claim that "instead of reimbursing delivery drivers for the reasonably approximate costs of the business use of their vehicles, Defendants use a flawed method to determine reimbursement rates that provides such an unreasonably low rate beneath any reasonable approximation of the expenses they incur that the drivers' unreimbursed expenses cause their wages to fall below the federal minimum wage" in violation of the FLSA. *Id.* Defendants deny these allegations and claim Plaintiffs are not entitled to reimbursement or other damages. [*See* DN 29]. Accordingly, the Court finds that there is a bona fide dispute as to whether Plaintiffs were properly compensated pursuant to the FLSA.

**II.     Fair and Reasonable**

Next, the Court must determine whether the settlement is a fair and reasonable resolution of the bona fide dispute. The Sixth Circuit has "established a seven-favor test to assess whether or not a class action settlement is 'fair, reasonable and adequate' under Federal Rule of Civil Procedure 23(e)." *Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 894 (6th Cir. 2019). These factors include: "(1) the risk of fraud or collusion, (2) the complexity, expense and likely duration of the litigation, (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits, (5) the opinions of class counsel and class representatives, (6) the reaction of absent class members, and (7) the public interest." *Id.* (citing *International Union, UAW, et al. v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)) (internal quotation marks omitted). "The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Crawford*, 2008 WL 4724499, at *3 (quoting *Redington v. Goodyear Tire & Rubber Co.*, 2008 WL 3981461, at *11 (N.D. Ohio August 22, 2008)). Courts have also used these factors to determine whether collective action settlements are fair and reasonable. *Id.* (citing *Collins*, 568 F. Supp. 2d at 719); *Ross*, 2016 WL 7320890, at *3.

### 1. Fraud or Collusion

The first factor the Court must consider in determining whether the settlement is fair and reasonable is the risk of fraud or collusion. "In the absence of evidence to the contrary, the court may presume that no fraud occurred and that there was no collusion between counsel." *Ross*, 2016 WL 7320890, at *3 (quoting *Crawford*, 2008 WL 4724499 at *6). This action was filed almost two years ago. Since then, the parties have engaged in informal discovery, including the production and analysis of work time, payroll, and expense reimbursement data, and interviews of current and former delivery drivers. [DN 34 at 167]. There is no evidence of fraud or collusion. Therefore, the

Court "finds that the settlement agreement was the result of arm's length, good-faith negotiations." *Id.* This factor weighs in favor of finding the settlement fair and reasonable.

### 2.  Complexity, Expense, and Likely Duration of the Litigation

"[T]he Court must also weigh the risks, expense and delay Plaintiffs would face if they continued to prosecute the litigation through trial and appeal." *Ross*, 2016 WL 7320890, at *3 (quoting *In re Sketchers Toning Shoe Prods. Liab. Litig.*, No. 3:11-MD-2308-TBR, 2013 WL 2010702, at *5 (W.D. Ky. May 13, 2013) (quoting *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010))). As indicated in the motion for approval of settlement, if this case were to continue to be litigated, "the Parties would engage in further discovery that would come at great cost, including additional written discovery, Rule 30(b)(6) depositions, depositions of various Opt-Ins, and additional electronic discovery and damages analysis." [DN 35 at 182]. Moreover, the parties stipulated that they wish to resolve this matter to avoid unnecessary further costs, time, and risks associated with continuing the litigation. *Id.* at 183. The Court agrees that continuing to litigate this case would result in greater expense for both parties and increase the duration of the litigation. Thus, this factor weighs in favor of finding the settlement fair and reasonable.

### 3.  The Amount of Discovery Engaged in By the Parties

Although the parties have engaged in only informal discovery, they claim that the production of payroll and reimbursement records facilitated both side's ability to make detailed legal and factual analyses of the claims and defenses. [DN 35 at 183]. Since more thorough discovery has not been conducted, *compare Ross*, 2016 WL 7320890, at *3 (concluding substantial discovery had been conducted where parties sent and responded to written discovery requests and took several depositions); *Crawford*, 2008 WL 4724499, at *7 (finding substantial discovery when

more than 200 interrogatories were completed and more than eighty depositions taken), this factor weighs only slightly in favor of finding the settlement fair and reasonable.

### 4. The Likelihood of Success on the Merits

"The Court must 'weigh[] the plaintiff[s'] likelihood of success on the merits against the amount and form of the relief offered in the settlement.'" *Ross*, 2016 WL 7320890, at *3 (quoting *In re Sketchers Toning Shoe Prods. Liab. Litig.*, 2013 WL 2010702, at *6 (quoting *Int'l Union*, 497 F.3d at 631)). Given that the parties have not engaged in substantial discovery or motion practice, it is difficult to gauge the likelihood of the Plaintiffs' success at trial. However, both parties recognize and have considered "the inherent risks in bringing the matter to trial." [DN 35 at 183]. Indeed, the Plaintiffs' will be required to prove that Defendants' policies and practices violated the FLSA and present evidence regarding each Plaintiff's specific damages. The risks of going to trial "should be weighed against the relief provided for in the settlement agreement." *Ross*, 2016 WL 7320890, at *4. Here, Plaintiffs will receive monetary compensation. Moreover, "Class Counsel is satisfied that this Agreement is in the best interest of the Class." [DN 34 at 168]. Therefore, the Court finds this factor weighs in favor of finding the settlement fair and reasonable.

### 5. The Opinions of Class Counsel and Class Representatives

"In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference." *Ross*, 2016 WL 7320890, at *4 (quoting *In re Sketchers Toning Shoe Prods. Liab. Litig.*, 2013 WL 2010702, at *6). In this case, the Settlement Agreement states that "counsel for the Parties are satisfied that the terms and conditions of the Agreement are fair, reasonable, and adequate, and Class Counsel is satisfied that this Agreement is in the best

6

interest of the Class." [DN 34 at 168]. As reported by counsel, this factor weighs heavily in favor of finding the settlement fair and reasonable.

### 6. The Reaction of Absent Class Members

Sixteen individuals joined the Named Plaintiff in this collective action. "There is no opt-out mechanism in FLSA actions as there are with class actions under Federal Rule of Civil Procedure Rule 23." *Ross*, 2016 WL 7320890, at *4. However, the Court is unaware of any objections to the Settlement Agreement. Thus, this factor weighs in favor of finding the settlement fair and reasonable.

### 7. The Public Interest

"There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Id.* (quoting *In re Sketchers Toning Shoe Prods. Liab. Litig.*, 2013 WL 2010702, at *7). "If the settlement reflects a reasonable compromise over issues actually disputed, such as FLSA coverage or computation of back wages, a court may approve a settlement to 'promote the policy of encouraging settlement of litigation.'" *Id.* (quoting *Crawford*, 2008 WL 4724499, at *9 (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1353)). In this case, the Settlement Agreement states that the "Parties [] considered the inherent risks in bringing the matter to trial, judicial resources, and the costs and time associated with further litigation and determined a settlement would be in the public's interest." [DN 35 at 183]. The Court agrees and finds that this factor weighs in favor of finding the settlement fair and reasonable.

Since each of the seven factors weighs in favor of finding the Settlement Agreement a fair and reasonable resolution of a bona fide dispute over FLSA provisions, the Court APPROVES the Settlement Agreement.

### B. Allocation of Settlement Proceeds

"As a part of its exacting and thorough examination of a class-action settlement, a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford*, 2008 WL 4724499, at *9. "The need for equity in distributions of proceeds is no less in a collective-action settlement." *Id.* "Neither the Federal Rules of Civil Procedure nor the Supreme Court requires that settlements offer a pro rata distribution to class members; instead the settlement need only be fair, reasonable, and adequate." *Int'l Union*, 497 F.3d at 628.

In this case, the settlement proceeds "shall be distributed to the Class on a pro-rata basis according to an equitable formula determined by class counsel." [DN 34 at 169]. The formula will take into account: (1) the total number of deliveries driven by each class member; (2) the wage rate earned by each class member; and (3) the reimbursement rate paid to each class member during each class member's applicable limitations period, provided that each class member shall receive a minimum payment of $100.00. *Id.* The Court finds that the proposed allocation of settlement proceeds is fair, reasonable, and adequate as it apportions funds based on the circumstances of each class member's employment by Defendants. Therefore, the Court APPROVES the proposed allocation of settlement proceeds.

### C. Incentive Award

The Joint Motion for Approval of Settlement also seeks approval of "the payment of an additional enhancement amount to the Named Plaintiff of $2,500." [DN 35 at 184]. "Such awards are not uncommon, and 'courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Ross*, 2016 WL 7320890, at *5 (quoting *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio, Mar. 8, 2010) (quoting *Cullen v. Whitman*

*Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000))). The Sixth Circuit has used the following factors to determine whether incentive awards are appropriate:

> (1) the action taken by the Class Representatives to protect the interests of the Class Members and others and whether these actions resulted in a substantial benefit to Class Members; (2) whether the Class Representatives assumed substantial direct and indirect financial risk; and (3) the amount of time and effort spent by the Class Representatives in pursuing the litigation.

*Id.* (quoting *In re Sketchers Toning Shoe Prods. Liab. Litig.*, 2013 WL 2010702, at *14).

In this case, the parties claim that the Named Plaintiff "helped counsel with factual background and assisted with the review of case documents to inform litigation strategy." [DN 35 at 184]. Moreover, the Named Plaintiff was "involved in the protracted settlement negotiations." *Id.* Thus, the parties argue, the "Plaintiff's conduct benefited all Opt-Ins." *Id.* Additionally, the parties note that the Named Plaintiff initiated this lawsuit under his name and "was directly and regularly involved in this litigation and accepted both financial and reputation risks by commencing and supporting it." *Id.* Finally, "[t]he Court finds further support for the incentive award in the fact that no objections were filed." *Ross*, 2016 WL 7320890, at *5. Based on the forgoing, the incentive award, as agreed to by the parties, is APPROVED.

### D. Attorneys' Fees and Costs

Finally, the parties seek approval of the attorneys' fees and costs as outlined in the Settlement Agreement. "In an action under § 216(b) of the FLSA, like this, '[a]n award of attorney fees . . . is mandatory, but the amount of the award is within the discretion of the judge.'" *Ross*, 2016 WL 7320890, at *5 (quoting *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994)). An attorneys' fee award must be reasonable. *See Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). "A reasonable fee is one that is 'adequate to attract competent counsel but . . . [does] not produce windfalls to attorneys.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). "The starting

point for determining a reasonable fee is the lodestar, which is the product of the number of hours billed and a reasonable hourly rate." *Crawford*, 2008 WL 4724499 at *12 (quoting *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007)). Then, "the court may apply various equitable considerations to adjust the lodestar amount." *Id.* However, "there is a strong presumption that the lodestar figure represents a reasonable fee." *Id.* (quoting *Tlacoapa v. Carregal*, 386 F.Supp.2d 362, 373 (S.D.N.Y. 2005)).

Plaintiffs' counsel, David Haynie, submitted a supplemental declaration stating that he has "extensive experience litigating wage and hour collective actions under the Fair Labor Standards Act" and has "been involved as counsel in numerous collective and class actions brought on behalf of pizza delivery drivers." [DN 41 at 196]. Since initiating this action, Mr. Haynie and his partner, Jay Forester, have invested over thirty hours in this case. *Id.* at 197. Mr. Haynie claims partner level employment attorneys with similar experience charge between $400 and $600 an hour. *Id.* Mr. Haynie also notes that he was previously approved at a rate of $500 per hour in three similar cases, including one case in the Western District of Kentucky. *Id.* Based on this previously approved rate, Mr. Haynie claims he would typically seek reimbursement of at least $15,000 (30 hours x $500/hour) for the time incurred litigating this matter. *Id.* at 198.

Pursuant to the Settlement Agreement, Plaintiffs' counsel seeks $11,880 in attorneys' fees. [DN 34 at 169]. By dividing the fee sought by the total number of hours worked, the calculated hourly rate charged is $396. According to Mr. Haynie's declaration, this is lower than the rate charged by attorneys with similar experience, [DN 41 at 197], and is within the range of hourly rates previously approved in this district, *see Lani v. Schiller Kessler & Gomez, PLC*, No. 3:16-CV-00018-CRS, 2016 WL 7401790, at *4 (W.D. Ky. Dec. 19, 2016), *amended in part sub nom. Lani on behalf of Schiller Kessler & Gomez, PLLC v. Schiller Kessler & Gomez, PLC,* No. 3:16-

CV-00018-CRS, 2017 WL 1146953 (W.D. Ky. Mar. 27, 2017) (finding rates between $275 and $400 reasonable for partners practicing in the Western District of Kentucky). Additionally, the Settlement Agreement provides for up to $3,842.13 in out-of-pocket costs incurred in pursuing the litigation. [DN 34 at 170]. The parties agree that the amount of attorneys' fees and costs "is a fair and reasonable compromise of the actual fees and costs incurred by Plaintiffs' counsel during this near year-long litigation and those that will be incurred by Plaintiffs' counsel to fully administer the settlement." [DN 35 at 184]. Thus, the Court finds that the $11,880 attorneys' fee and $3,842.13 for costs proposed in the Settlement Agreement is reasonable.

## CONCLUSION

For the reasons set forth herein, the parties' Joint Motion for Approval of Settlement and Dismissal of Case with Prejudice, [DN 35], is GRANTED. The Court will enter an Order contemporaneous to this Memorandum Opinion.

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

April 29, 2020

CC: Attorneys of Record